FILED

2011 JAN 19 PM 4:32

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2010 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. MIRA ZEFFREN, Defendant. | CR 11- CR11 0042 |
| | I N D I C T M E N T |
| | [18 U.S.C. § 371: Conspiracy; 26 U.S.C. § 7206(1): Subscribing to a False Income Tax Return] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1. Spinka was a religious group within Orthodox Judaism. Spinka established a variety of charitable organizations ("Spinka charitable organizations") that were public charities, contributions to which could be tax deductible under the Internal Revenue Code.

//

//

DOB DOB

2. Co-conspirator Naftali Weisz ("Weisz") was the Grand Rabbi, or spiritual leader, of Spinka.

3. Co-conspirator Moshe E. Zigelman ("Zigelman") was a Gabbai, or executive assistant, to Grand Rabbi Weisz.

4. Co-conspirator Weisz and co-conspirator Zigelman regularly solicited and accepted charitable contributions on behalf of the Spinka charitable organizations.

5. Defendant MIRA ZEFFREN was a businesswoman residing in Los Angeles, California who owned and operated a business called Kyffin Pharmacy.

6. Yaakov Zeivald, also known as Yankel Zeivald ("Zeivald"), was a self-described professional scribe residing in Valley Village, California.

7. Moshe Lazar ("Lazar") was the owner of Lazar Diamonds, a business located in Los Angeles, California.

8. Alan Jay Friedman ("Friedman") was a businessman who resided in Los Angeles, California.

9. Yosef Naiman ("Naiman") was a businessman who resided in Los Angeles, California.

COUNT ONE

[18 U.S.C. § 371]

10. Paragraphs 1 through 9 of this Indictment are hereby realleged and incorporated as though fully set forth below.

A. OBJECT OF THE CONSPIRACY

11. Beginning on an unknown date and continuing to on or about December 19, 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendant MIRA ZEFFREN, together with co-conspirators Weisz, Zigelman, contributor B, contributor G, contributor S, and others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to defraud the United States and agencies thereof, by impeding, impairing, obstructing, and defeating the lawful governmental functions of a government agency, namely the Internal Revenue Service ("IRS"), by deceitful and dishonest means, in violation of Title 18, United States Code, Section 371.

B. MANNER AND MEANS OF THE CONSPIRACY

12. The object of the conspiracy was carried out in the manner and by the means described below.

The Fraudulent Charitable Contribution Scheme

13. To help solicit charitable contributions on behalf of the Spinka charitable organizations, co-conspirator Weisz and co-conspirator Zigelman would secretly refund to Spinka contributors, including defendant ZEFFREN, and co-conspirators B, G, and S (collectively "the conspiring contributors") a significant portion, typically 90 to 95 percent, of their nominal contributions to Spinka charitable organizations. In this manner, the conspiring contributors could fraudulently claim as

tax deductions the full amounts of their nominal contributions to the Spinka charitable organizations, while having actually contributed as little as 5 to 10 percent of the amounts of the claimed deductions.

14. The conspiring contributors would send charitable contribution checks to co-conspirator Zigelman and others for the benefit of the Spinka charitable organizations.

15. Co-conspirator Weisz and co-conspirator Zigelman would cause charitable contribution receipts to be mailed by the Spinka charitable organizations to the conspiring contributors in the full amount of their nominal contributions to the respective Spinka charitable organizations.

16. Co-conspirator Weisz and co-conspirator Zigelman would cause a large portion of the conspiring contributors' contributions, typically 90 to 95 percent, to be secretly delivered to the conspiring contributors through a variety of means, including some combination of the following:

    a. cash payments to the conspiring contributors, arranged through an underground money transfer network involving various parties in and around Los Angeles and elsewhere, including Zeivald, Lazar, Friedman, and Naiman (the "money remitters"); and/or

    b. wire or other transfers into foreign bank accounts secretly maintained by the conspiring contributors in Israel.

17. Defendant ZEFFREN would assist in the distribution of cash to the other conspiring contributors, receiving cash from the money remitters and delivering it to co-conspirators B, G, and S.

18.  The conspiring contributors would file U.S. income tax returns claiming charitable deductions in the full amounts of their nominal contributions to the Spinka charitable organizations, without factoring in the approximately 90 to 95 percent of those contributions that had been secretly returned to them.

C.  OVERT ACTS

19.  In furtherance of the conspiracy and to accomplish its object, defendant ZEFFREN and co-conspirators Weisz, Zigelman, contributor B, contributor G, contributor S, and other co-conspirators known and unknown to the Grand Jury committed and willfully caused others to commit the following overt acts, among others, in the Central District of California and elsewhere:

Overt Act No. 1:  On or about May 17, 2005, defendant ZEFFREN received $9,300 in cash from a money remitter.

Overt Act No. 2:  On or about May 18, 2005, defendant ZEFFREN issued a check on behalf of Kyffin Pharmacy in the amount of $5,000 payable to Machne Svah Ratzon, a Spinka charitable organization.

Overt Act No. 3:  On or about May 19, 2005, defendant ZEFFREN issued a check in the amount of $5,000 payable to Congregation Chakal Yitzchok, a Spinka charitable organization.

Overt Act No. 4:  On or about July 25, 2005, defendant ZEFFREN received $9,300 in cash from a money remitter.

Overt Act No. 5:  On or about July 26, 2005, defendant ZEFFREN issued a check on behalf of Kyffin Pharmacy in the amount of $10,000 payable to Congregation Chakal Yitzchok, a Spinka charitable organization.

Overt Act No. 6: On or about December 5, 2005, defendant ZEFFREN received $9,300 in cash from a money remitter.

Overt Act No. 7: On or about December 5, 2005, defendant ZEFFREN issued a check on behalf of Kyffin Pharmacy in the amount of $10,000 payable to Machne Svah Ratzon, a Spinka charitable organization.

Overt Act No. 8: On or about March 20, 2006, defendant ZEFFREN received $13,950 in cash from a money remitter.

Overt Act No. 9: On or about March 22, 2006, defendant ZEFFREN issued a check on behalf of Kyffin Pharmacy in the amount of $10,000 payable to Yeshiva Imrei Yosef, a Spinka charitable organization.

Overt Act No. 10: On or about March 22, 2006, defendant ZEFFREN issued a check in the amount of $5,000 payable to Yeshiva Imrei Yosef, a Spinka charitable organization.

Overt Act No. 11: On or about June 6, 2006, defendant ZEFFREN received $120,000 in cash from a money remitter.

Overt Act No. 12: On or about June 8, 2006, defendant ZEFFREN issued a check on behalf of Kyffin Pharmacy in the amount of $10,000 payable to Mosdos Spinka International, a Spinka charitable organization.

Overt Act No. 13: On or about June 8, 2006, defendant ZEFFREN issued a check in the amount of $10,000 payable to Mosdos Spinka International, a Spinka charitable organization.

Overt Act No. 14: On or about June 8, 2006, defendant ZEFFREN issued a check in the amount of $1,400 payable to Gemach Tzedakah Vechesed, a Spinka charitable organization.

Overt Act No. 15: On or about June 8, 2006, co-

conspirator B issued a check in the amount of $25,000 payable to Mosdos Spinka International, a Spinka charitable organization.

Overt Act No. 16: On or about June 8, 2006, co-conspirator B issued a check in the amount of $25,000 payable to Yeshiva Imrei Yosef, a Spinka charitable organization.

Overt Act No. 17: On or about June 8, 2006, co-conspirator B issued a check in the amount of $3,000 payable to Gemach Tzeduka Vechesed, a Spinka charitable organization.

Overt Act No. 18: On or about June 8, 2006, co-conspirator S, the wife of co-conspirator G, issued a check in the amount of $25,000 payable to Mosdos Spinka International, a Spinka charitable organization.

Overt Act No. 19: On or about June 8, 2006, co-conspirator S issued a check in the amount of $25,000 payable to Yeshiva Imrei Yosef, a Spinka charitable organization.

Overt Act No. 20: On or about June 13, 2006, co-conspirator S issued a check in the amount of $3,500 payable to Congregation Chakal Yitzchok, a Spinka charitable organization.

Overt Act No. 21: On or about August 30, 2006, defendant ZEFFREN received $50,000 in cash from Zeivald.

Overt Act No. 22: On or about September 1, 2006, co-conspirator B issued a check in the amount of $30,000 payable to Mosdos Spinka International, a Spinka charitable organization.

Overt Act No. 23: On or about September 1, 2006, co-conspirator B issued a check in the amount of $2,000 payable to Congregation Chaka Yitzchok, a Spinka charitable organization.

Overt Act No. 24: On or about September 1, 2006, defendant ZEFFREN issued a check in the amount of $5,000 payable

to Congregation Chakal Yitzchok, a Spinka charitable organization.

Overt Act No. 25: On or about September 5, 2006, defendant ZEFFREN issued a check on behalf of Kyffin Pharmacy in the amount of $15,000 payable to Central Rabbinic Seminary, a Spinka charitable organization.

Overt Act No. 26: On or about September 5, 2006, defendant ZEFFREN issued a check in the amount of $1,500 payable to Yeshiva Imrei Yosef, a Spinka charitable organization.

Overt Act No. 27: On or about October 9, 2006, co-conspirator B filed an IRS Form 1040 individual income tax return for the calendar year 2005, in which he fraudulently claimed deductions for the full amount of his nominal contributions to the Spinka charitable organizations, without accounting for the portions of those contributions that had been returned to him.

Overt Act No. 28: On or about January 7, 2007, co-conspirator Weisz and co-conspirator Zigelman calculated that, for the year 2006, the Spinka charitable organizations had received $8,718,659 through contributors solicited through co-conspirator Zigelman and that they had "profits" of $744,596 after deducting the amounts paid back to the various contributors.

Overt Act No. 29: On or about January 7, 2007, co-conspirator Weisz and co-conspirator Zigelman calculated that, for the year 2006, $51,450 was "what was left from" defendant ZEFFREN and that she must have given close to $730,000.

Overt Act No. 30: On or about January 31, 2007, co-conspirator Zigelman informed defendant ZEFFREN that he had

$150,000 available in Los Angeles.

Overt Act No. 31: On or about January 31, 2007, defendant ZEFFREN informed co-conspirator Zigelman the she would ask co-conspirators B and G if they were interested in the money.

Overt Act No. 32: On or about February 4, 2007, defendant ZEFFREN informed co-conspirator Zigelman that she was interested in $30,000 or $40,000 for herself.

Overt Act No. 33: On or about February 5, 2007, defendant ZEFFREN received $90,000 in cash from Zeivald.

Overt Act No. 34: On or about February 12, 2007, co-conspirator S issued a check in the amount of $20,000 payable to Congregation Chakal Yitzchok, a Spinka charitable organization.

Overt Act No. 35: On or about February 12, 2007, co-conspirator S issued a check in the amount of $20,000 payable to Kollel Tiferes Yakov Yosef, a Spinka charitable organization.

Overt Act No. 36: On or about February 12, 2007, co-conspirator S issued a check in the amount of $20,000 payable to Kollel Tiferes Yakov Yosef, a Spinka charitable organization.

Overt Act No. 37: On or about February 12, 2007, co-conspirator S issued a check in the amount of $3,000 payable to KC, a Spinka charitable organization.

Overt Act No. 38: On or about February 12, 2007, co-conspirator S issued a check in the amount of $1,200 payable to Yeshiva Imrei Yosef, a Spinka charitable organization.

Overt Act No. 39: On or about February 12, 2007, defendant ZEFFREN issued a check in the amount of $2,000 payable to Central Rabbinical Seminary, a Spinka charitable organization.

Overt Act No. 40: On or about February 12, 2007,

defendant ZEFFREN issued a check in the amount of $10,000 payable to Central Rabbinical Seminary, a Spinka charitable organization.

Overt Act No. 41: On or about February 12, 2007, defendant ZEFFREN issued a check on behalf of Kyffin Pharmacy in the amount of $10,000 payable to Central Rabbinical Seminary, a Spinka charitable organization.

Overt Act No. 42: On or about February 16, 2007, defendant ZEFFREN issued a check on behalf of Kyffin Pharmacy in the amount of $10,000 payable to Congregation Chakal Yitzchok, a Spinka charitable organization.

Overt Act No. 43: On or about October 12, 2007, co-conspirator B filed an IRS Form 1040 individual income tax return for the calendar year 2006, in which he fraudulently claimed deductions for the full amount of his nominal contributions to the Spinka charitable organizations, without accounting for the portions of those contributions that had been returned to him.

Overt Act No. 44: On or about October 12, 2007, co-conspirator G and co-conspirator S jointly filed an IRS Form 1040 individual income tax return for the calendar year 2006, in which they fraudulently claimed deductions for the full amount of their nominal contributions to the Spinka charitable organizations, without accounting for the portions of those contributions that had been returned to them.

COUNT TWO

[26 U.S.C. § 7206(1)]

20. On or about July 26, 2006, in Los Angeles County, within the Central District of California, defendant MIRA ZEFFREN ("ZEFFREN") knowingly and willfully made and subscribed a joint Individual U.S. Tax Return for the calendar year 2005, which was verified by a written declaration that it was made under the penalties of perjury and that was filed with the Internal Revenue Service, which return defendant ZEFFREN did not believe was true and correct as to every material matter in that the income tax return reported on Schedule A, line 16 that she made $167,437 in cash charitable donations, whereas, as she then knew and believed, her cash charitable donations were substantially less than that amount.

COUNT THREE

[26 U.S.C. § 7206(1)]

21. On or about September 19, 2006, in Los Angeles County, within the Central District of California, defendant MIRA ZEFFREN ("ZEFFREN") knowingly and willfully made and subscribed a U.S. Corporate Income Tax Return on behalf of Kyffin Pharmacy for the calendar year 2005, which was verified by a written declaration that it was made under the penalties of perjury and that was filed with the Internal Revenue Service, which return defendant ZEFFREN did not believe was true and correct as to every material matter in that the income tax return attached a "Statement 4" that reported Kyffin Pharmacy incurred $505,688 in promotion deductions, whereas, as she then knew and believed, Kyffin Pharmacy's promotion deductions were substantially less than that amount.

COUNT FOUR

[26 U.S.C. § 7206(1)]

22. On or about September 4, 2007, in Los Angeles County, within the Central District of California, defendant MIRA ZEFFREN ("ZEFFREN") knowingly and willfully made and subscribed a joint Individual U.S. Tax Return for the calendar year 2006, which was verified by a written declaration that it was made under the penalties of perjury and that was filed with the Internal Revenue Service, which return defendant ZEFFREN did not believe was true and correct as to every material matter in that the income tax return reported on Schedule A, line 16 that she made $290,205 in cash charitable donations, whereas, as she then knew and believed, her cash charitable donations were substantially less than that amount.

COUNT FIVE

[26 U.S.C. § 7206(1)]

23. On or about September 17, 2007, in Los Angeles County, within the Central District of California, defendant MIRA ZEFFREN ("ZEFFREN") knowingly and willfully made and subscribed a U.S. Corporate Income Tax Return on behalf of Kyffin Pharmacy for the calendar year 2006, which was verified by a written declaration that it was made under the penalties of perjury and that was filed with the Internal Revenue Service, which return defendant ZEFFREN did not believe was true and correct as to every material matter in that the income tax return attached a "Statement 4" that reported Kyffin Pharmacy incurred $1,179,040 in promotion deductions, whereas, as she then knew and believed, Kyffin Pharmacy's promotion deductions were substantially less than that amount.

A TRUE BILL

/S/
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section

DANIEL J. O'BRIEN
Assistant United States Attorney
Public Corruption & Civil Rights Section